IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAI‘I

| | |
|---|---|
| SARA ESIH,<br><br>Petitioner,<br><br>v.<br><br>SHIKHA DOSANJ, Warden, Federal Detention Center, Honolulu; CURRENT OR ACTING FIELD OFFICE DIRECTOR, SAN FRANCISCO FIELD OFFICE, Enforcement and Removal Operations, U.S. Immigration and Customs Enforcement,<br><br>Respondents. | Case No. 26-cv-00557-DKW-WRP<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF *HABEAS CORPUS*** |

Petitioner Sarah Esih petitions this Court pursuant to 28 U.S.C. § 2241 for a writ of *habeas corpus*, requesting, *inter alia*, that the Court issue the writ and order her immediate release. Dkt. No. 1; Dkt. No. 11. For the reasons set forth herein, the petition is GRANTED IN PART AND DENIED IN PART.

## LEGAL STANDARD

A federal district court may issue a writ of *habeas corpus* when a federal prisoner establishes that she "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A district court

considering an application for a writ of habeas corpus shall "award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto." 28 U.S.C. § 2243.

Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts ("Habeas Rules"), which is also applicable to Section 2241 cases, requires courts to conduct a preliminary review of each petition for writ of habeas corpus. *See* Habeas Rule 4. "If it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief," the district court must summarily dismiss the petition. *Id.*; *see Clayton v. Biter*, 868 F.3d 840, 845 (9th Cir. 2017). The district court should not dismiss a habeas petition "without leave to amend unless it appears that no tenable claim for relief can be pleaded were such leave granted." *Jarvis v. Nelson*, 440 F.2d 13, 14 (9th Cir. 1971) (per curiam) (citations omitted).

## RELEVANT BACKGROUND[1]

Esih arrived in the United States in November 2015 from Slovenia. Dkt. No. 1 ¶ 23; Dkt. No. 7 at 1. She was admitted under the Visa Waiver Program

[1] "The allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true." 28 U.S.C. § 2248.

("VWP"), 8 U.S.C. § 1187. *See* Dkt. No. 1 ¶¶ 25–26; Dkt. No. 7 at 1. Under this program, her admission was valid for ninety days, and she agreed at that time to waive "any rights to review or appeal" any removal action under the VWP "other than on the basis of an application for asylum." Dkt. No. 7-3. Shortly after admission, Esih applied for asylum. Dkt. No. 7 at 1. Her application was based on "physical violence, discrimination, and mistreatment she suffered in Slovenia" as a lesbian woman. Dkt. No. 1 ¶ 30.

Esih asserts that her lawyer failed to advise her of the date and time of her asylum interview, and, as a result, she did not appear. *Id.* ¶ 32. On June 9, 2020, DHS referred Esih's asylum application to the immigration court. *Id.* ¶ 33; Dkt. No. 1-4; Dkt. No. 7-4. Once again, Esih's lawyer failed to advise her of the referral or a hearing date, and accordingly, she did not appear. Dkt. No. 1 ¶¶ 34–35. On December 16, 2022, the Immigration Judge denied Esih's asylum application. Dkt. No. 7 at 2; Dkt. No. 1-5; Dkt. No. 7-5. Esih asserts that she was subject to removal after this point, though DHS took no custodial action against her. Dkt. No. 1 ¶¶ 34, 36.

From the time of her arrival in the United States, Esih has resided continuously in Los Angeles. *Id.* ¶ 27. In July 2025, Esih married a U.S. citizen with whom she had lived with for four years prior to marriage. *Id.* ¶ 28. Esih's

wife filed a Form I-130 on her behalf, and a Form I-485 has been prepared. *Id.* Esih had been employed by H&M for approximately eight years, beginning as a sales associate and advancing into management, for which she had employment authorization from DHS. *Id.* ¶ 29.

In July 2026, Esih traveled to Hawaiʻi on a business trip. *Id.* ¶ 48. On July 15, 2026, as Esih attempted to return to Los Angeles, she was detained at the Honolulu International Airport. *Id.* ¶ 49; Dkt. No. 7 at 2. After she was detained, Esih was served with a VWP Notice of Intent to Issue a Final Administrative Removal Order. Dkt. No. 7 at 2; *see* Dkt. No. 7-6. Esih did not respond. Dkt. No. 7 at 2. On July 28, 2026, she was issued a VWP Final Administrative Removal Order and was ordered removed to Slovenia. *Id.*; *see* Dkt. No. 7-7.

On August 26, 2026, the West Los Angeles Immigration Court granted a joint motion to reopen Esih's asylum-only proceedings and transferred venue to the Honolulu Immigration Court. Dkt. No. 7 at 2; *see* Dkt. No. 1 ¶ 38. On September 15, 2026, Esih filed a request for a custody redetermination hearing. Dkt. No. 7 at 3. On October 16, 2026, the Immigration Judge denied her request on the ground that he lacked authority to redetermine custody conditions under the VWP. *Id.*; Dkt. No. 1 ¶ 54; Dkt. No. 1-3; Dkt. No. 7-8. Esih reserved appeal. Dkt. No. 1 ¶ 55; Dkt. No. 7 at 3. No order of removal has been entered since the

asylum-only proceedings were reopened; Esih therefore is not currently subject to a removal order. Dkt. No. 1 ¶ 46; *see* Dkt. No. 7 at 8.

On September 21, 2026 and October 6, 2026, Esih appeared for master-calendar hearings before the Honolulu Immigration Court to address her request for asylum. Dkt. No. 7 at 3. At both hearings, Esih's lawyer requested a continuance based on attorney preparation. *Id.* Proceedings were reset for a master-calendar hearing on November 6, 2026. *Id.*

On October 26, 2026, Esih filed her petition for a writ of habeas corpus. Dkt. No. 1. She argued that she is detained under 8 U.S.C. § 1226(a), she should not be detained indefinitely without a hearing, her Fifth Amendment Due Process rights were violated, and she should be released or given a bond hearing. *Id.* On November 2, 2026, the Government filed its responsive brief. Dkt. No. 7. It argued that Esih waived her right to contest deportation on any basis other than asylum and that the VWP does not entitle her to a bond hearing or release. *Id.* On November 5, 2026, Esih filed her reply. Dkt. No. 11. She substantially revised the arguments from her Petition, but consistently requested release. *Id.* This Order now follows.

## DISCUSSION

### I. Fifth Amendment Due Process

Esih argues that she should be released, in part, because her confinement violates the Due Process Clause of the Fifth Amendment. Dkt. No. 1 ¶¶ 84–95; Dkt. No 11 at 9–10. She alleges that she has not received a custody review after over three months of confinement, and argues that under the Government's theory, she will never be entitled to one. *Id.* The Government does not address Esih's Fifth Amendment argument in its brief. Dkt. No. 7. As explained below, the Court finds that Esih's detention violates her Fifth Amendment Due Process rights.

The Due Process Clause of the Fifth Amendment provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

Courts analyze procedural due process inquiries "in two steps." *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Id.* (internal citations omitted). Here, the first

step is satisfied because "[i]t is clear that commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) (internal citation omitted).

When considering the second step, the Ninth Circuit has "regularly applied" *Mathews v. Eldridge*, 424 U.S. 319 (1976) "to due process challenges to removal proceedings." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022) (collecting cases). *Mathews* "is not a bright line test, but is flexible depending on the circumstances." *Pinnacle Armor, Inc. v. United States*, 648 F.3d 708, 716 (9th Cir. 2011) (internal citations omitted). Under *Mathews*, the Court considers three factors: (1) the private interest affected by the official action; (2) the risk of an erroneous deprivation; and (3) the Government's interest. *Mathews*, 424 U.S. at 335.

The first *Mathews* factor involves Esih's private interest in remaining free from detention. As the Supreme Court has explained, "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Esih's protected liberty interest in remaining free from custody is especially strong since she has "developed significant ties to the United States." *See Vallejos Pozo v. Scott*, 2026 WL 3229433, at *3 (W.D.

Wash., Oct. 28, 2026). Esih has been living in the United States for over a decade. Dkt. No. 1 ¶ 1. She is married to a U.S. citizen, with whom she has been living for the last five years. *Id.* And she has worked for the same employer for the last eight years, for which she has lawful work authorization. *See id.* She has not left the United States since her arrival, and before the domestic trip to Honolulu during which she was detained, she had not left Los Angeles. *Id.* ¶ 27. The Court therefore finds that the first *Mathews* factor strongly favors Esih.

The second *Mathews* factor—risk of erroneous deprivation—likewise weighs in Esih's favor. The "risk of an erroneous deprivation of [a petitioner's] interest is high" where she "has not received any bond or custody redetermination hearing[.]" *A.E. v. Andrews*, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025), *report and recommendation adopted*, 2025 WL 1808676 (E.D. Cal. July 1, 2025) (internal citation omitted). Although, as Esih acknowledges, the Supreme Court in *Zadvydas* determined that the Government must justify continued detention after six months of confinement, and she has been detained for only three and a half months, that is not preclusive. *See* Dkt. No. 1 ¶¶ 87–88 (citing *Zadvydas*, 533 U.S. at 701). Risk of erroneous deprivation is not dependent upon prolonged detention, and other district courts in this circuit have found the *Mathews* factors satisfied where the petitioner has been detained for less time than Esih. *See, e.g.*,

*Vallejos Pozo*, 2026 WL 3229433, at *1–3 (finding *Mathews* satisfied where petitioner was detained for 2.5 months). Further, as Esih argues and the Government does not contest, under the Government's theory, Esih may never be entitled to individualized custody review. *See* Dkt. No. 1 ¶ 62.

The third *Mathews* factor involves the Government's interest. Here, the Court recognizes that the Government has an interest in enforcing immigration laws. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022). However, this factor otherwise favors Esih. The Government chose not to address Esih's constitutional arguments in its brief, and therefore seems to concede the point. This is perhaps unsurprising. Nothing in the record before this Court demonstrates that Esih is a flight risk or a danger to her community. To the contrary, she has "never been arrested, never been charged with any crime, and never been incarcerated," Dkt. No. 1 ¶ 51, and as described above, she has strong ties to her community, *see id.* ¶ 1.

On balance, the Court finds that the *Mathews* factors weigh in Esih's favor. The Court, in turn, finds that the Government has violated Esih's Fifth Amendment Due Process rights, and orders her immediate release. *See Brito Fuentes v. Warden of Nw. ICE Processing Ctr.*, 2026 WL 2641344, at *2 (W.D. Wash. Sept. 8, 2026) ("A finding in favor of an immigration petitioner under *Mathews* requires

immediate release to restore the status quo.”).

## II. Esih’s Other Claims

In light of the Court’s ruling granting immediate release to Esih on her due process claim, the Court declines to address the other issues raised in the petition and responsive briefs.

## CONCLUSION

For the reasons stated herein, Esih’s petition for writ of *habeas corpus*, Dkt. No. 1, is GRANTED IN PART AND DENIED IN PART. The Court ORDERS:

1. Esih’s immediate release from custody. The Government is ORDERED to release Esih from their custody by no later than 5:00p.m. (HT) on November 7, 2026.
2. The Government may use the time between the present and that mandatory release time to afford U.S. Immigration and Customs Enforcement an opportunity to impose reasonable conditions of supervision. But in no event does this order allow the Government to delay Esih’s release past 5:00 p.m. (HT) on November 7, 2026.
3. On or before November 9, 2026, the Government must file a notice certifying compliance with this order.

4. The Court waives the posting of any bond or security that might be required by Fed. R. Civ. P. 65(c).

5. Esih's request for a declaration that she is detained pursuant to 8 U.S.C. § 1226(a) is DENIED.

6. Esih's request for a declaration that she entitled to an individualized custody determination is DENIED.

7. Esih's request for an individualized custody hearing by an Immigration Judge is DENIED.

IT IS SO ORDERED.

DATED: November 6, 2026 at Honolulu, Hawai'i.

Derrick K. Watson
Chief United States District Judge